**Alice LOVE et al., Plaintiffs-Appellants,**

**v.**

**DeCARLO HOMES, INC., et al.,**
**Defendants-Appellees.**

**No. 72-3585.**

United States Court of Appeals,
Fifth Circuit.

July 30, 1973.

Sally Weintraub, Legal Services of Greater Miami, Inc., Perrine, Fla., for plaintiffs-appellants.

Edward C. Vining, Jr., R. M. MacArthur, Miami, Fla., for DeCarlo Homes, and others.

Before BELL, GOLDBERG and SIMPSON, Circuit Judges.

BELL, Circuit Judge:

This is an appeal from a summary judgment rendered against plaintiffs. Plaintiffs-appellants filed a class action against DeCarlo Homes, Inc., and two banks,[1] alleging racial discrimination in the sale and financing of certain residential property located in Dade County, Florida. Plaintiffs' claim below was predicated upon alleged violations of the Civil Rights Act of 1866, 42 U.S.C.A. §§ 1981, 1982, 1983 and 1985.[2] We affirm.

---

1. The summary judgments entered on behalf of the two banks are not contested on this appeal.

2. Plaintiffs have not invoked any of the provisions of the Fair Housing Act of 1968, 42 U.S.C.A. § 3601 et seq.

In affirming we are satisfied to rely on the careful consideration and reasoning of the district court as demonstrated in its opinion granting summary judgment. In the view of the district court: "[T]heir [plaintiffs'] claims are not those of victims of discriminatory deprivation, but those of alleged victims of an overreaching opportunist."

Plaintiffs sought to represent a class of some 300 individuals who had purchased houses in Lincoln Estates, a subdivision developed by DeCarlo Homes in a section of Dade County populated largely by black citizens and thus, in effect, for blacks. The purchases in issue took place between 1963–1968. The named plaintiffs were thirteen (including four couples) of the some 300 purchasers. Seven of the group were involved in foreclosure proceedings on their purchases in the Florida state courts either before or during the instant litigation. The essence of their federal complaint was that DeCarlo Homes took advantage of each purchaser by imposing onerous, unconscionable, and unlawful provisions in each contract for the purchase of a house in Lincoln Estates.[3] In addition to the contract terms, plaintiffs complained of other deceptive practices, all of which had the effect of denying purchasers "fair financing". Such practices included: discouraging plaintiffs from retaining counsel for assistance in the purchase of homes; leading purchasers to believe that home insurance could be obtained only through DeCarlo's insurance agency; and requiring purchasers to execute quitclaim deeds in DeCarlo's favor, apparently to facilitate the cutting off of a purchaser's interest and also as a continuing threat to a purchaser.

Noting the pattern of residential racial segregation existing in Dade County, Florida, and the scarcity of residential housing available to blacks in the area, plaintiffs contended that DeCarlo Homes was able to exploit them only because of their race. In addition to the provisions complained of in the agreements for deed and the alleged deceptive selling practices, plaintiffs claimed that Lincoln Estates houses were sold for amounts in excess of the fair market value for similar properties located in predominately white communities proximately located. However, plaintiffs did not assert that DeCarlo Homes refused to sell, to blacks, houses located in any of their other subdivisions. Nor did plaintiffs allege that DeCarlo Homes sold houses similar to those in Lincoln Estates to whites but on more favorable terms. Plaintiffs' complaint was directed solely to the contract terms, and the selling and collection practices of DeCarlo Homes.[4]

At the second hearing held in the district court, there was an attempt to show that purchasers in a predominately white subdivision developed by DeCarlo Homes were given more favorable terms than Lincoln Estates purchasers. Plaintiffs established that owners of houses

---

3. Plaintiffs twice amended their complaint. *Inter alia*, they complained of the form of the contract, an agreement for deed rather than a warranty deed. The contract terms complained of in the agreements for deed included provisions for "late fees", "attorney's fees", and "court costs" imposed when late notices demanding payment were sent; forfeiture of all payments upon default in any installment payment; a requirement that purchasers maintain insurance through a "highest insurable value" clause; and unlawful interest rates. Plaintiffs also complain that the agreements for deed were misrepresented to be mortgages for terms of fifteen years or less. Unlawful evictions and threats of eviction are also alleged. Plaintiffs also asserted that their houses were poorly constructed and that DeCarlo Homes refused to make necessary repairs.

4. On oral argument, counsel for plaintiffs conceded that they were not complaining about the absence of whites in Lincoln Estates and thus were not presenting a *Trafficante* type claim. Trafficante v. Metropolitan Life Insurance Co., 1972, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415.

located in this other subdivision had acquired warranty deeds rather than the agreements for deed used in Lincoln Estates. However, to secure the warranty deeds, these purchasers were required to make a down payment of at least ten per cent of the purchase price. Under the agreements for deed used in Lincoln Estates, the down payment required was only one to three per cent. Aimed at a different market, the houses in the predominately white subdivision were substantially more expensive than the houses located in Lincoln Estates. In short, the two subdivisions did not contain "similar properties" and thus were not fit subjects for comparison. Moreover, the houses in Lincoln Estates were available for purchase by cash, or through FHA or conventional financing. In these latter events, however, the down payments would be larger and it would have been necessary for each purchaser to personally qualify for the loan whereas the DeCarlo financing was available on an entirely different basis. That basis was a low down payment, and low monthly payments coupled with a high but not unlawful interest rate with DeCarlo being the lender through the banks.[5]

On appeal, plaintiffs have abandoned all theories to establish a cause of action save their § 1982 claim. This statute provides that:

> "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

Virtually dormant for one-hundred years, § 1982 was revitalized by the Supreme Court in 1968. In Jones v. Alfred H. Mayer Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, a private developer, selling houses to whites,

refused to sell a house to a black solely because of race. In these circumstances, it was clear that members of one race were being treated in a different manner from members of another race. Racial discrimination was established; the only question was whether such conduct by a private person fell within the purview of § 1982. The Court held that § 1982 barred all racial discrimination in the sale or rental of property.

The instant case presents an altogether different claim from the refusal to sell involved in *Jones*. The alleged injury to plaintiffs stems from the fact that black citizens in 1963 were forced to buy houses in a limited geographic area because of residential racial segregation in the Dade County, Florida area. This residential racial segregation resulted in a scarcity of residential housing available to blacks. In plaintiffs' view, DeCarlo Homes exploited this scarcity to exact onerous and unlawful terms. The allegations presented in plaintiffs' complaint, if true, would presumably afford a basis for relief in the state courts in the form of seeking reformation of contract or actions for fraud and deceit or damages. The difficulty, however, with plaintiffs' bringing a civil rights suit in federal court is that the acts complained of do not fit within the traditional concept of racial discrimination.

Plaintiffs are complaining that a private party, (DeCarlo), engaged in a practice of racial discrimination. Racial discrimination normally involves treating, in similar circumstances, a member or members of one race different from the manner in which members of another race are treated. In their complaint, plaintiffs do not allege that DeCarlo Homes actually treated whites differently, or more favorably in similar circumstances. While plaintiffs did attempt by proof to show that DeCarlo Homes treated whites more favorably in anoth-

---

5. The evidence developed in these hearings demonstrated that at least one and probably more homeowners in Lincoln Estates

did use FHA financing to obtain warranty deeds.

**616**

er DeCarlo subdivision, the evidence, as stated, indicated only that the houses in this predominately white subdivision were not in a similar market costwise or with the differences attendant in the marginal risk financing present in Lincoln Estates. In sum, plaintiffs have not shown that DeCarlo Homes discriminated against them on the basis of race by selling houses to whites on more favorable terms.

Since racial discrimination in the usual sense is not involved here, the question left is whether § 1982 can somehow be extended to reach the conduct of DeCarlo Homes. Plaintiffs urge that their case fits within the decision in Contract Buyers League v. F. & F. Investment, N.D.Ill., 1969, 300 F.Supp. 210, aff'd. Baker v. F. & F. Inv., 7 Cir., 1970, 420 F.2d 1191. The court in *Contract Buyers* held that a complaint alleging the sale of property to non-whites at higher prices and less favorable terms than would have been offered to whites stated a cause of action under § 1982.

Plaintiffs' complaint against DeCarlo Homes does bear some of the earmarks of the complaint in *Contract Buyers* for it too alleges that non-whites were offered houses at higher prices and on more onerous terms than were offered to whites in predominately white communities proximately located, but this did not prove to be the case. Plaintiffs have been afforded two hearings to present evidence to support their claims, including the § 1982 claim.[6] The record contains no evidence of houses similar to those in Lincoln Estates being sold to whites on less burdensome terms. In short, there is no genuine issue of fact on the pivotal question. Plaintiffs cannot show disparate treatment as between whites and blacks within equal protection concepts. In the end, § 1982, although applicable to private persons under Jones v. Mayer, supra, nevertheless rests on an equal protection premise to

the extent that blacks are being denied something pertaining to property that is available to whites. See the history of § 1982 in Hurd v. Hodge, 1948, 334 U.S. 24, 32–34, 68 S.Ct. 847, 92 L.Ed. 1187.

Affirmed.

---

6. Plaintiffs do not argue that the procedure employed by the district court deprived them of an opportunity to present the evidence necessary to establish a cause of action.