[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11088
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cv-01283-MMH-JRK

ERNEST MCDUFFIE, III,
d.b.a. D&M Contracting Company,

Plaintiff-Appellant,

versus

CITY OF JACKSONVILLE, FLORIDA, ETC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 17, 2015)

Before JORDAN, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Ernest McDuffie, III, proceeding *pro se*, appeals the district court's grant of summary judgment to the City of Jacksonville (City) on his *pro se* civil action brought under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment's Equal Protection Clause and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, *et. seq.* (Title VI).  McDuffie contends (1) the district court in granting summary judgment to the City on his claim that the City violated the Equal Protection Clause by passing an ordinance about the licensing of journeymen, and (2) the district court erred in granting summary judgment on his claim that the City violated Title VI by discriminating against him on the basis of race when it did not approve three funding projects.  As the parties are familiar with the facts of the case, we weave them into the discussion only as necessary.  Upon review, we affirm.[1]

*1. Section 1983*

The district court did not err in granting summary judgment to the City on McDuffie's § 1983 claim because McDuffie presented insufficient evidence to show that Jacksonville Ordinance 2010-680 (the Journeyman Ordinance) was

---

[1] McDuffie's brief, construed liberally, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), also asserts the following additional arguments:  (1) the City failed to comply with federal regulations applicable to national banking associations; (2) the City violated § 3 of the Small Business Act; (3) the district court abused its discretion by (a) failing to strike the City's summary judgment motion because it did not comply with a local rule, (b) granting summary judgment before he received an opportunity to conduct full discovery, and (c) failing to conclude the City's summary judgment motion was filed in bad faith; and (4) the district court violated the Fourteenth Amendment's Equal Protection Clause by granting summary judgment to the City.  We reject these arguments without discussion.

motivated by intent to discriminate.  *See Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993) ("To establish an equal protection clause violation, a plaintiff must demonstrate that a challenged action was motivated by an intent to discriminate.").  The ordinance on its face was race-neutral:  it merely struck a requirement that journeymen with expired licenses had to file a renewal application "within six months" after the license elapsed in order for the Construction Trades Qualifying Board (CTQB)[2] to waive a required examination:

> Failure of the holder of the delinquent certificate of competency to renew prior to the expiration of the current licensure cycle renders the certificate of competency invalid.  The holder of the invalid certificate of competency must reapply in the same manner, including examination and all applicable fees. However, the Board may waive the examination requirements for good cause shown. ~~if an application is filed within six months after expiration of the certificate of competency.~~

*See* Jacksonville, Fla., Ord. 2010-680 amending Chapter 342 (Construction Trades Regulations), Section 342.118(c) of the Jacksonville Code of Ordinances.

Moreover, McDuffie presented no evidence from which discriminatory intent could be inferred.  For instance, he did not present evidence the City Council deviated from its normal procedures when passing the Journeyman Ordinance, nor did he point to any discriminatory statements in the ordinance's legislative history.  *See Elston*, 997 F.2d at 1406 ("Discriminatory intent may be established by

---

[2] The CTQB is an independent board of the City of Jacksonville made up of 18 members who are appointed by the mayor and confirmed by the City Council.  The CTQB licenses, regulates, and disciplines roughly 9,000 locally licensed construction, electrical, and apartment maintenance personnel.

evidence of . . . procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision."). To the contrary, evidence from both parties established the sole purpose of the Journeyman Ordinance was to allow the CTQB greater latitude in waiving the examination requirement for journeymen with expired licenses.

According to McDuffie, however, the Journeyman Ordinance was motivated by discriminatory intent because (i) the ordinance requires more construction workers to become journeymen, (ii) African-American workers were historically unable to become journeymen, and (iii) a previous law that required a minimum ratio of journeymen on projects stifled the growth of African-American-owned businesses. McDuffie's reading of the Journeyman Ordinance is incorrect. The ordinance did not change the requirements for the use of journeymen on construction sites. It simply deleted the requirement that an applicant must file an application "within six months" after expiration of a license in order to have the exam waived, thereby giving the CTQB greater latitude in waiving the exam requirement for workers with expired licenses. McDuffie's unsupported allegation that the Journeyman Ordinance reinstated a journeyman work ratio, standing alone, cannot create a genuine issue of fact as to whether the ordinance was motivated by discriminatory intent. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)

4

("[U]nsupported factual allegations are legally insufficient to defeat a summary judgment motion."). Accordingly, the district court did not err by granting summary judgment on McDuffie's § 1983 claim.

## 2. *Title VI*

The district court also did not err in granting summary judgment to the City on McDuffie's Title VI claim. First, the district court correctly concluded McDuffie could not bring a disparate impact claim against the City under Title VI because Title VI does not create a private right of action for such a claim. *See Alexander v. Sandoval*, 532 U.S. 275, 293 (2001) (holding there is no private right of action to enforce disparate-impact regulations promulgated under Title VI); *see also Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 346 (11th Cir. 2012) ("[P]rivate individuals may recover compensatory damages under Title VI *only* in cases of intentional discrimination.").

Second, the district court did not err, much less clearly err, in finding the City was not motivated by discriminatory intent when it declined to award McDuffie contracts for three proposed rehabilitation projects. *See Pullman-Standard v. Swint*, 456 U.S. 273, 290 (1982) ("[A] court of appeals may only reverse a district court's finding on discriminatory intent if it concludes that the finding is clearly erroneous."); *Elston*, 997 F.2d at 1405 (reviewing a district court's findings as to whether a defendant engaged in intentional discrimination for

5

clear error).  The undisputed evidence shows McDuffie lost out on these contracts, not because of his race, but because his bid proposals did not comply with the City's requirement that bids include a complete work write-up.  *See* Department of Housing and Urban Development Rental Rehabilitation Loan Program Policy & Procedures Manual (Program Manual) § 9.1 (explaining a "Bid Package" consists of "a complete work write-up, spec's, drawings, [etc.]"); Program Manual § 9.6 ("The bid will be reviewed to make sure all items are addressed" and "[i]f the bid is incorrect, it shall be returned to the owner(s) requesting the additional information.").  The City gave McDuffie ample opportunity to submit revised complying bids; however, McDuffie refused to do so because he did not want to bid against himself.  McDuffie points to no evidence suggesting the winning bidders did not have to comply with the same bid requirements or that he was otherwise singled out on account of his race.  *See Love v. DeCarlo Homes, Inc.*, 482 F.2d 613, 615 (5th Cir. 1973)[3] ("Racial discrimination normally involves treating, in similar circumstances, a member or members of one race different from the manner in which members of another race are treated.").  The district court therefore did not err in granting summary judgment to the City on McDuffie's Title VI claim.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment to the City.