769 F.Supp. 1086 (1991)
Jeannie ROBERTS, as Class Representative of all black customers in the State of Missouri who paid defendant for their merchandise by check at defendant's stores Nos. 25 (Mexico), 51 (Fulton), 61 (Warrensburg), 122 (Jackson), 187 (Pacific), 234 (Liberty), 326 (Higginsville), 805 (Fenton), 1161 (St. Charles), 1171 (Barrett Station Road), and 1188 (Bridgeton/St. Ann), Plaintiffs,
v.
WALMART STORES, INC., Defendant.
No. 89-2279-C-5.
United States District Court, E.D. Missouri, E.D.
August 8, 1991.
*1087 Louis Gilden, Charles Oldham, St. Louis, Mo., for plaintiffs.
James E. Whaley, Brown, James & Rabbitt, St. Louis, Mo., for defendant Walmart Stores, Inc.

MEMORANDUM
LIMBAUGH, District Judge.
Defendant is a corporation that owns and operates retail department stores throughout the United States. Plaintiffs are a class of black persons who have purchased merchandise by check from eleven of defendant's stores located in Missouri.[1] Plaintiff Jeannie Roberts[2] filed a complaint alleging that defendant's practice of recording the race of a black customer who paid for merchandise by check on the back of the check violates 42 U.S.C. § 1981 and 42 U.S.C. § 1982.[3] Plaintiffs seek for the Court to enjoin defendant from recording the race of its black customers who pay by check. Plaintiffs also pray for compensatory and punitive damages. This cause is before the Court on defendant's motion for summary judgment.
Courts have repeatedly recognized that summary judgment is a harsh remedy which should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, *1088 however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Electric Cooperative Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, supra, 838 F.2d at 273. Once the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the non-moving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that can logically be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
On December 5, 1989 Jeannie Roberts was a customer at a store operated by defendant in St. Charles, Missouri (No. 1161). During this visit Mrs. Roberts purchased several items and presented the cashier with a check in payment for the merchandise. The cashier recorded the race of Jeannie Roberts by writing a "B" for black on the back of the check. When Mrs. Roberts became aware that her race was being recorded on the check, she became upset and demanded to know the reason for the identification of her race. Managers at the St. Charles store explained that race was recorded in order to provide police with a more complete identification of the customer if the check is returned unpaid. Mrs. Roberts left the store unsatisfied with the explanation. After consulting with her husband, Mrs. Roberts went back to the store, returned the merchandise that she had purchased, and retrieved the check that she had previously presented in payment.
Defendant began recording the race of customers who paid by check in September or October, 1989 at the following stores in the St. Louis metropolitan area: Nos. 25 (Mexico), 51 (Fulton), 61 (Warrensburg), 122 (Jackson), 187 (Pacific), 234 (Liberty), 326 (Higginsville), 805 (Fenton), 1161 (St. Charles), 1171 (Barrett Station Road), and 1188 (Bridgeton/St. Ann). When a customer paid by check, the cashier would first ring up the merchandise on the cash register. After the check was completed by a customer, the cashier would take the check and apply to the back of it a rubber stamp that left the following imprint:
 Wal-Mart Store # XX-XXXX
 Address_________________
 Phone___________________
 Dr.Lic.#________________
 Sex_____Race____D.O.B.___
 Photo I.D.___Ok'd By____
 FOR DEPOSIT ONLY
(Emphasis added). Defendant's cashiers were instructed to fill in all the information, supra, for each customer who paid by check.[4] In the section requesting identification of the customer's race, the cashier *1089 would place a "W" for a white customer, "B" for a black customer, "H" for a Hispanic customer, and "A" for an Asian customer. The cashier identified the race of the customer from her observation of the customer during the transaction.
The source of the defendant's practice to record the race of customers who pay by check is a disputed issue. Defendant asserts that it began recording the race of customers at the request of local law enforcement officials who wanted identification of a customers' race in order to facilitate the prosecution of customers who pass bad checks. Plaintiffs assert that neither the prosecutors of St. Louis County nor St. Charles County requested defendant to record the race of the customer. Although the Court recognizes that the origin of the practice is in dispute, whether the practice was requested by law enforcement officials has no bearing on its lawfulness under 42 U.S.C. § 1981 or § 1982. Therefore, the Court assumes, for purposes of this motion for summary judgment, that local law enforcement officials played no role in defendant's decision to record the race of the customer on the back of checks.[5]
In February, 1991 defendant stopped recording the race of the customer on the back of the check. Defendant's store managers were instructed to cut the race designation off the rubber stamp.

42 U.S.C. § 1981 and § 1982
Plaintiff asserts that defendant's practice of recording the customer's race on the back of checks violated 42 U.S.C. § 1981 and 42 U.S.C. § 1982. Title 42 U.S.C. § 1981 provides, in relevant part: "All persons ... shall have the same right ... to make contracts ... as is enjoyed by white citizens." Title 42 U.S.C. § 1981 prohibits the refusal to enter into a contract on racial grounds as well as an offer to enter into a contract only on discriminatory terms. Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989). Title 42 U.S.C. § 1982 provides, in relevant part:
All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to ... purchase ... personal property.
The purpose of § 1981 and § 1982 is to eradicate discrimination on the basis of race. Racial discrimination involves treatment, in similar circumstances, of a member or members of one race differently from the manner in which members of another race are treated. Love v. De Carlo Homes, Inc., 482 F.2d 613, 615 (5th Cir. 1973).
There is no evidence that black customers who paid by check were treated differently than white customers who paid by check. First, defendant's cashiers were instructed to record the race of all customers who paid by check, not just black customers. There is no evidence that the cashiers recorded the race of only black customers, or that the cashiers recorded the race of blacks disproportionately to whites. Second, the race of the customer had no effect on the commercial transaction. Defendant did not refuse to accept the check of a customer who was identified as black. Defendant did not refuse to sell merchandise to a customer who was identified as black. There is also no evidence that customers identified as black were forced to show more identification, demonstrate more substantial credit history, or wait for higher level approval before their checks were accepted as payment for merchandise. In essence, the sole difference between the transaction involving a white customer and *1090 one involving a black customer is that the white customer's race was recorded with a "W" and a black customer's race was recorded as a "B".
Plaintiffs complain that identification of race is a precursor to discrimination. The Court is empowered to look beyond the form of a transaction to its substances and proscribe practices which predictively result in racial discrimination, irrespective of defendant's motivation. Williams v. Matthews Company, 499 F.2d 819, 826 (8th Cir.1974). Although plaintiffs raised questions about the origin of defendant's practice, plaintiffs have not come forth with a explanation as to how defendant's practice could predictively lead to discrimination when the identification of the customer's race occurred at the close of the retail transaction.
It is understandable, given the history of discrimination against blacks in the United States, that a black customer may become more upset that a white customer when her race was recorded on the back of a check. The difference in reaction to the practice between a black customer and a white customer, however, is insufficient to sustain a violation of 42 U.S.C. § 1981 or § 1982 if the black customer and white customer are indeed being treated equally. In sum, plaintiffs have failed to put forth any evidence that black customers were treated any differently than white customers. Also, plaintiffs have failed to put forth any evidence that defendant's practice of recording the customer's race at the close of a retail transaction could predictively lead to discrimination in treatment. For the foregoing reasons, the Court grants defendant's motion for summary judgment.
NOTES
[1] In an order dated January 25, 1991 the Court certified this action as a class action under Fed.R.Civ.P. 23(b)(2).
[2] Norris Roberts, the spouse of Jeannie Roberts, was also named as a plaintiff in the complaint. The Court denied approval of Norris Roberts as a representative of the class on the ground that he lacked typically because he had never purchased merchandise from defendant with a check and had never had his race recorded on the back of a check.
[3] Plaintiffs also alleged that defendant's practice violated the Thirteenth Amendment of the United States Constitution and the Equal Credit Opportunity Act, 15 U.S.C. § 1691. In an order dated May 22, 1990, the Court dismissed plaintiffs' claims under the Thirteenth Amendment and the Equal Credit Opportunity Act.
[4] Defendant did not record the race of customers who paid for merchandise with cash or credit cards.
[5] The Court is giving plaintiffs the benefit of the doubt in this assumption. On the issue of the origin of defendant's practice plaintiffs filed the affidavit of Charles Oldham, an attorney of record for plaintiffs. In his affidavit Mr. Oldham states that he talked with Mr. Robert McCullough, the prosecuting attorney for St. Louis County, and Mr. John Davis, assistant prosecutor in the bad check unit of the St. Charles County prosecutor's office. Mr. Oldham states that Mr. McCullough and Mr. Davis denied that defendant's practice was instituted at their office's request. Although the Court does not doubt Mr. Oldham's integrity, ordinarily, an affidavit from counsel of a party containing hearsay statements is not sufficient to create a question of material fact for the purpose of opposing a motion for summary judgment.