Verlinda WELLS, Valencia Wells, Alicia Wells, and Tenesha Wells, Plaintiffs,

v.

BURGER KING CORPORATION, Davgar Restaurants, Inc., d/b/a Burger King Restaurants, M.A., Garcia, III, Owner and Chief Executive Officer of Davgar Restaurants, Inc., and Sandy (Lnu), Defendants.

No. 4:97CV473–WS.

United States District Court, N.D. Florida, Tallahassee Division.

Dec. 14, 1998.

Marie A. Mattox, Mattox & Hood, PA, Tallahassee, FL, for Verlinda Wells, Valencia Wells, Alicia Wells, Tenesha Wells, plaintiffs.

Charles Robinson Fawsett, Shutts & Bowen, LLP, Orlando, FL, Bernard H. Dempsey, Jeffrey K. Grant, Peter F. Carr, Dempsey & Sasso, Orlando, FL, Sheila M. Cesarano, Shutts & Bowen, LLP, Miami,

FL, for Burger King Corporation, defendant.

Charles Robinson Fawsett, Shutts & Bowen, LLP, Orlando, FL, for Thomas J. Mueller, Sandy Lnu, defendants.

Charles Robinson Fawsett, Shutts & Bowen, LLP, Orlando, FL, Bernard H. Dempsey, Jeffrey K. Grant, Peter F. Carr, Dempsey & Sasso, Orlando, FL, for M.A. Garcia, III, defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART AND REMANDING CASE TO STATE COURT

STAFFORD, Senior District Judge.

Plaintiffs in this action seek redress for alleged racial discrimination, suffered by them at a restaurant in Tallahassee, Florida, on or about April 1, 1994. Plaintiffs seek relief under (1) the Civil Rights Act of 1866, Title 42, United States Code, Section 1981 ("section 1981"); and (2) Sections 509.092 and 760.11, Florida Statutes.

Before the court at this time is a motion for summary judgment (doc. 23) filed by Davgar Restaurants, Inc. ("Davgar") and M.A. Garcia, III ("Garcia"). Plaintiffs have responded (doc. 30) in opposition to the motion, and the parties have been advised (doc. 35) that the motion would be taken under advisement as of a date certain.

### I.

In support of their motion for summary judgment, Davgar and Garcia have submitted copies of Plaintiffs' sworn statements/affidavits. These statements were originally submitted to the Florida Commission on Human Relations ("FCHR") in support of the administrative charge of discrimination filed by Plaintiffs. According to Plaintiffs, during the evening of April 1, 1994, four black girls, including sisters Valencia, Tenesha and Alicia Wells, attempted to place five separate orders at the drive-through window of a Burger King restaurant in Tallahassee, Florida. After Valencia Wells ("Valencia") successfully placed and paid for two orders, a white employee told Valencia that no more than three separate orders could be placed at one time at the drive-through window. Valencia then changed her mind about the purchases and asked for a refund. According to Valencia, she changed her mind at least in part because the employee was "nasty" and "abrasive" to her. After Valencia received her refund, the girls drove away.

The girls later returned to the lobby of the restaurant with Verlinda Wells ("Verlinda"), the mother of the three sisters. According to Plaintiffs, the assistant manager, Sandra Lynn Goff ("Goff"), treated them rudely, refused to serve them, told them to leave the restaurant, and summoned the police. A SWAT team soon after surrounded the restaurant while an armed officer entered the building. After talking with Goff, the officer asked Verlinda and the girls to step outside where he explained that they needed to leave the premises.

Defendants have also submitted copies of the affidavits of three employees, Goff included, who were working at the restaurant on the evening of April 1, 1994. As described by these individuals, the events of April 1, 1994, unfolded somewhat differently. According to Goff and Rachel Bowden ("Bowden"), the employee working the drive-through window at the time, Valencia was repeatedly told that, while company policy precluded the placement of five separate orders at the drive-through window, she and the other girls could place their complete order in the lobby. The girls instead argued about the policy, used abusive language, and asked for a refund before driving off. When the girls later returned to the restaurant with their mother, Goff attempted to explain the drive-through policy to Verlinda. Goff, Bowden, and Gerald J. Carter, who was then working as a dishwasher, say that Verlinda responded by yelling and screaming, speaking in tongues, waiving her arms, and grabbing Goff's arm. Goff says she told Verlinda and the girls to leave the

restaurant because they were creating a disturbance. When they refused, Goff advised an employee to push the silent alarm.

## II.

 In Count I of their amended complaint, Plaintiffs allege that the defendants intentionally discriminated against them on the basis of their race in violation of section 1981. They challenge only the treatment they received in the lobby of the restaurant. They do not claim a discriminatory denial of service at the drive-through window.

 Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."[1] 42 U.S.C. § 1981(a). To establish a claim under section 1981 where, as here, there is no direct evidence of racial discrimination, Plaintiffs must first establish an inference of discrimination under the burden shifting provisions established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946 (11th Cir.1991), *cert. denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992). Under the *McDonnell Douglas* test, Plaintiffs have the initial burden of demonstrating that: (1) they are members of a protected class; (2) they attempted to contract for certain services; (3) they were denied the right to contract for those services; and (4) such services remained available to similarly situated persons outside the protected class. If Plaintiffs are able to prove the elements of a prima facie case, the burden of production shifts to Defendants to articulate, though not necessarily to prove, a legitimate, nondiscriminatory reason for the challenged action. If Defendants articulate a legitimate reason for their actions, the burden shifts back to Plaintiffs to prove that Defendants' proffered reason is simply a pretext for discrimination. Plaintiffs have the final burden, in other words, of producing evidence sufficient to allow a factfinder to disbelieve Defendants' proffered explanation for their actions. *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998).

Assuming, for the sake of argument, that Plaintiffs have established a prima facie case of racial discrimination under section 1981[2], the burden shifts to Defendants to articulate a non-discriminatory reason for refusing to serve Plaintiffs. Defendants contend, and have presented evidence to support their contention, that Plaintiffs were asked to leave the restaurant because they (Plaintiffs) were creating a disturbance. Defendants having thus articulated a legitimate reason for refusing to serve Plaintiffs, this court's task becomes a "highly focused one." *Combs*, 106 F.3d at 1538. As explained in *Combs*:

> The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory

---

1. Where a plaintiff is not deprived of a right enumerated in the statute, there is no violation of section 1981. *See, e.g., Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir.1996) (section 1981 not violated when store employee called police about black patrons who were thought to be acting suspiciously); *Jackson v. Tyler's Dad's Place, Inc.*, 850 F.Supp. 53 (D.D.C. 1994) (section 1981 not violated when two African–Americans returned to a restaurant to complain about being turned away earlier), *aff'd*, 107 F.3d 923, 1996 WL 678443 (D.C.Cir.1996). In this case, the relevant enumerated right is the right to make and enforce a contract.

2. There is no dispute about the first three elements of Plaintiffs' prima facie case. The fourth element, which requires proof that similarly situated individuals outside the protected class were treated differently, is problematic. There is no evidence, for example, that a group of four non-minority women were refused service when, like Plaintiffs, they entered the restaurant late at night, immediately asked to see the manager about an earlier incident at the drive-through window, handed identification to the manager, and only asked to be served after having a less-than-friendly conversation with the manager.

reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct." ... The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."

*Combs*, 106 F.3d at 1538 (citations omitted).

In her most recently filed affidavit, doc. 79, Verlinda states that "[m]y sole purpose in going back to the Burger King on April 1, 1994, was to determine if there was a problem with my children and what prevented them from being served with their multiple orders on April 1, 1994, and to then place orders in the lobby so we could eat." As her own words make clear, Verlinda did not accompany her children to the Burger King merely to order food; she accompanied her children back to the Burger King for the express purpose of confronting the manager about the treatment her children received. It is undisputed, moreover, that Verlinda's first action when she entered the restaurant was *not* to proceed to the counter to place an order for food but rather to engage the manager in conversation about the earlier incident. Only when the conversation became contentious did the manager tell Verlinda that the police were being called and that service was being denied.

Plaintiffs contend that they were denied service because of their race. They have submitted no evidence, however, to corroborate their own self-serving statements that Defendants were motivated by race. In contrast, Defendants contend that service was denied because Plaintiffs created a disturbance; and all of the evidence—from Plaintiffs and Defendants alike—tends to corroborate the nondiscriminatory reason proffered by Defendants. Because, in this court's view, Plaintiffs have *not* demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason[ ] for its action that a reasonable factfinder could find [it] unworthy of credence," *Combs*, 106 F.3d at 1538, the court will grant Defendants' motion for summary judgment as to Count I.

Accordingly, it is ORDERED;

1. Defendants' motion for summary judgment (doc. 23) is GRANTED as to Count I.

2. Summary judgment having been granted as to Plaintiffs' only federal claim, the case shall be REMANDED to the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, for consideration of Plaintiffs' state law claims. The clerk shall send a certified copy of this order of remand to the Clark of the Circuit Court in and for Leon County.