**John GARRETT, Plaintiff**

v.

**TANDY CORPORATION d/b/a Radio Shack, Defendant**

**No. CIV. 00–384–PH.**

United States District Court, D. Maine.

June 12, 2001.

Jeffrey Neil Young, McTeague, Higbee, MaCadam, Case, Watson & Cohen, Topsham, ME, for John Garrett, plaintiffs.

Jonathan Shapiro, Melinda J. Caterine, Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, ME, for Tandy Corporation dba Radio Shack, defendants.

## MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS COUNTS I AND III OF THE AMENDED COMPLAINT

HORNBY, Chief Judge.

Racial profiling or stereotyping is highly objectionable. But when a private retailer engages in the practice, it does not create a basis for a federal claim by a customer unless the retailer deprives the customer of a right or interest protected by federal statute. Here, the customer tries to fit his complaint under two old civil rights statutes (one of them more recently amended), 42 U.S.C. §§ 1981 & 1982, that protect primarily contractual relations and property. I conclude that no property or contract interests of the customer were affected here. I also conclude that a store employee's report to the police that he "suspects" a customer of theft is a statement of opinion that does not imply any defamatory facts; it therefore is not actionable under Maine's defamation law.

### BACKGROUND

Jurisdiction is based upon federal question, 28 U.S.C. § 1331 (1993), and diversity of citizenship. 28 U.S.C. § 1332 (1993 & West Supp.2000). The matter is before me on a motion to dismiss Count I (the federal count charging racial discrimination) and Count III (a state defamation charge) of the Amended Complaint for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6).

Accordingly, I treat as true all facts alleged in the Amended Complaint.[1]

The plaintiff, John Garrett, a disabled black Vietnam veteran, shopped at the Cook's Corner Radio Shack store in Brunswick on December 21, 1998. He was looking for a police scanner, but ultimately could not find his desired model in that store. He ended up purchasing a telephone/answering machine, a book, and batteries. After giving his name and address in connection with the purchase, he left the store. Up until this point, nothing objectionable had happened. It is what occurred later that evening that prompts Garrett's lawsuit.

The store manager and two other employees on duty that night were white. After Garrett left the store, the store manager discovered that a $2,000 computer was missing. He had the names of three or four white shoppers who had been there at about the same time as Garrett. The store manager informed the Brunswick Police Department that he suspected Garrett of stealing the computer. The Brunswick Police called the nearby Bath Police Department; the Bath police visited Garrett and obtained his verbal consent to search his house and car. They did not find the computer. Garrett then called the Radio Shack store manager and complained that he felt he was being singled out because he was black. The store manager assured Garrett that he had reported white shoppers as well. In fact, that was untrue. Radio Shack has made no other efforts to locate the missing computer. Garrett would like to return the telephone/answering machine but is now reluctant to go to any Radio Shack store for fear of being accused of shoplifting.

1. In its reply memorandum on the motion to dismiss, the defendant makes factual assertions, which it supports with documents attached to the reply. The assertions and the documents are not properly before me on a motion to dismiss, and I do not consider them.

ANALYSIS

## (1) Discrimination

The relevant federal civil rights statutes provide:

§ 1981.  Equal rights under the law

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens. . . .

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C.A. § 1981 (1994) (as amended by the Civil Rights Act of 1991).

§ 1982.  Property rights of citizens

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C.A. § 1982 (1994).

Garrett claims that Radio Shack singled him out because of his race in calling the police, and that this conduct interfered with his "right to enter into, enforce, and enjoy the benefits and privileges of a contractual relationship" with Radio Shack; his "prospective contractual relations" with Radio Shack; and his "ability to purchase personal property" from Radio Shack.

■  If Garrett was singled out because he was black, that is reprehensible.[2]  But his federal claim depends on whether he was denied any contractual rights or property rights within the meaning of the two statutes.  On the allegations of the Amended Complaint, no such disruption occurred.  Specifically, Garrett consummated his contractual relationship with Radio Shack: he purchased his supplies and went home, without any interference based upon his race.  The objectionable conduct all occurred thereafter, and did not have anything to do with the purchase Garrett made.  As a result of what happened, Garrett may be personally fearful of risking racially unfair treatment on another visit to Radio Shack, but there is no suggestion in his Amended Complaint that Radio Shack wants to discourage him from further purchases.  That is the focus of these two statutes: restrictions on the ability to contract or purchase property, not general mistreatment related to race.  Radio Shack's store manager may have treated Garrett badly, but on the allegations here, he did not interfere with contract or property rights based upon Garrett's race.[3]

---

**2.**  I will pass over the fact that the Amended Complaint does not actually allege that Garrett was similarly situated to the white shoppers except for his race—*i.e.*, it does not allege that the store manager had no reason, but for race, to focus on Garrett.  The Amended Complaint does allege that the store manager later lied about reporting white shoppers, and I will treat that, for purposes of this motion, as sufficient to make out a jury question on discrimination.  (This point has not been argued.)

**3.**  Most of the caselaw involving section 1981 has developed in the employment context. *Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir.1996).  The First Circuit has not had occasion to apply it (or its companion section 1982) in the retail shopping context.  Other Circuits have.  The Seventh Circuit applies section 1981 strictly and requires that a complaint "allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Id.* at 414–15.  Under section 1982, the fact that an incident

## (2) Defamation

■ According to the Amended Complaint, Radio Shack defamed Garrett when it reported him to the police as a suspect in the computer theft. Am. Compl. ¶ 18 (alleging that the store manager informed the police that he "suspected ... Garrett of the theft"); Am. Compl. ¶ 25 (alleging that Radio Shack reported Garrett's name to the police "as the suspect in the alleged theft"); Am. Compl. ¶ 33 (alleging that Radio Shack defamed Garrett when it reported him "of suspected theft"). The nub of the dispute is the word "suspected": The Amended Complaint does not allege that Radio Shack told the police that Garrett *committed* a crime, but that the manager *suspected* him of committing a crime. On its face, that is a statement of opinion, not fact.

■ An opinion that "cannot reasonably be understood as implying unstated defamatory facts" is not actionable. *True v. Ladner*, 513 A.2d 257, 262 (Me.1986); *see also Fortier v. Int'l Bhd. of Elec. Workers, Local 2327*, 605 A.2d 79, 80 (Me. 1992). An opinion can be actionable, however, if it "could reasonably be understood by the ordinary person as implying unstated defamatory facts." *True*, 513 A.2d at 262; *see also Fortier*, 605 A.2d at 80.[4] In that event, the jury is asked to determine whether it is a statement of fact or opinion. *True*, 513 A.2d at 262. Otherwise, it is a question of law for the court. *Caron v. Bangor Publ'g Co.*, 470 A.2d 782, 785 (Me. 1984).

In this case, the store manager's statement to the police officer that he "suspected" Garrett of taking the computer explicitly stops short of asserting that Garrett actually committed the crime. Nor does it assert that the manager personally believed that Garrett· committed the crime: "I suspect" connotes less certainty than "I

---

might discourage people from patronizing a store is also not enough. *Id.; accord Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir.2001) (stating that " '[w]e are aligned with all the courts that have addressed the issue that there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping,' " and rejecting an "expansive interpretation that § 1981 broadens the scope of relevant civil rights and protects customers from harassment upon entering a retail establishment"). *But cf. Hall v. Pa. State Police*, 570 F.2d 86, 92 (3d Cir. 1978) (allegation that bank had policy of photographing only black patrons was enough to withstand motion to dismiss). Garrett also cites the Sixth Circuit case of *Watson v. Fraternal Order of Eagles*, 915 F.2d 235 (6th Cir.1990), as supporting his argument. In *Watson*, however, the defendant allegedly asked the plaintiffs to leave the premises in order to prevent them from purchasing. That is enough under any reading of the statute. As the *Watson* court observed, "[w]ere it otherwise, commercial establishments could avoid liability merely by refusing minorities

entrance to the establishment before they had the chance to order." *Id.* At 243. In any event, whether a strict or more generous reading of the two statutes is followed, Count I of this Amended Complaint does not survive.

4. Other jurisdictions have intimated that only fairly certain statements of opinion can imply defamatory facts. *See Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir.2000) (quoting Judge Posner, in *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir.1993), for the proposition that when a speaker is plainly expressing conjecture or surmise (among other things) " 'rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable' " under either New Hampshire or Virginia law, whichever applied); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 546–47 (2nd Cir.1999) (finding that an employer's investigation of an employee, where there was no accusatory statement, was not defamatory under New Jersey law because it only intimated a suspicion, was nonspecific and therefore nonverifiable, and was contingent and subjective).

believe," or "I think."[5] Indeed, "suspect" connotes only that the manager had some suspicion that Garrett was the culprit. To suspect is to surmise, based on little or no evidence.[6] The statement's very uncertainty stops it from implying anything defamatory (for example, it does not imply that the manager actually saw Garrett stealing the computer). Rather, if it implies any factual assertions at all, they are not defamatory (for example, it might imply underlying assertions such as that Garrett was at the store before the computer was discovered missing, or, more seriously but still not defamatory, that Garrett had behaved in some way the manager deemed suspicious.) Therefore, I conclude that the statement is nonactionable opinion.

### (3) Injunctive Relief

On his remaining count—for violation of the Maine Human Rights Act—Garrett seeks both damages and a permanent injunction enjoining Radio Shack from engaging in any policy or practice that discriminates against him on the basis of race. Radio Shack has moved to dismiss the claim for injunctive relief, arguing that the complaint does not allege a real and immediate threat of present or future harm.

The Maine Human Rights Act directs that if a court finds unlawful discrimination, "its judgment must specify an appropriate remedy or remedies for that discrimination." 5 M.R.S.A. § 4613(2)(B) (West Supp.2000). One of the statute's suggested remedies is: "(1) An order to cease and desist from the unlawful practices specified in the order." 5 M.R.S.A. § 4613(2)(B)(1) (West Supp.2000). It is premature to decide at this point that no such relief is available. Radio Shack's motion to dismiss the claim for injunctive relief is DENIED.

### CONCLUSION

Accordingly, the defendant's motion to dismiss Counts I and III of the Amended Complaint is GRANTED and the motion to dismiss the claim for injunctive relief is DENIED.

So ORDERED.

---

**5.** Garrett cites language in *Packard v. Cent. Me. Power Co.*, 477 A.2d 264 (Me.1984) to support his argument that his claim is actionable. The language in *Packard* was stronger, however: there the defendant apparently asserted that it actually believed that the defendant had committed the crime. *Id.* at 266. Moreover, *Packard* makes no holding on the issue; it merely states in dictum that a trial justice had properly given a privilege instruction on a defamation claim. *Id.* at 267–68.

**6.** The American Heritage Dictionary of the English Language (4th ed.2000) defines "suspect" variously as "[t]o surmise to be true or probable; imagine," "[t]o have doubts about; distrust," "to think (a person) guilty without proof," and "[t]o have suspicion." Webster's Revised Unabridged Dictionary (1996) defines "suspect" as "[t]o imagine to exist; to have a slight or vague opinion of the existence of, without proof, and often upon weak evidence or no evidence; to mistrust; to surmise." And the Oxford English Dictionary defines it as "[t]o imagine something evil, wrong, or undesirable ... on slight or no evidence; to believe or fancy to be guilty or faulty, with insufficient proof or knowledge; to have suspicions or doubts about," "[t]o imagine ... something wrong ... with slight or no proof," "to imagine ... (something) to be possible or likely; to have a faint notion or inkling of; to surmise."