Kelina **BALTIMORE–CLARK**

v.

**KINKO'S INC.,** et al.

**No. CIV.A. DKC 2002–3120.**

United States District Court,
D. Maryland.

July 7, 2003.

Fatai A. Suleman, Law Office of Fatai A. Suleman, Takoma Park, MD, for plaintiff.

Thomas P. Dowd, Littler Mendelson, PC, Washington, DC, for defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this race discrimination case brought pursuant to 42 U.S.C. § 1981 is Defendant Kinko's Inc.'s motion to dismiss Plaintiff Kelina Baltimore–Clark's Complaint. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will grant the motion to dismiss.[1]

### I. Background

The following facts are alleged by Plaintiff. Plaintiff, an African–American female, is the owner and operator of a hair styling salon in Germantown, Maryland. On April 11, 2002, Plaintiff went to a Kinko's store in Germantown to make advertising flyers for her business. Plaintiff's advertisement featured figures of black females and she chose pink paper for the photocopies.

While Plaintiff was making her copies, Defendant Barbara Stevenson (Stevenson), a Caucasian female employee at the Ger-

---

1. Defendant Barbara S. Stevenson is proceeding *pro se* and has filed an answer. Because the analysis applicable to the claims against Kinko's applies with equal force to the claim against Ms. Stevenson, the entire complaint will be dismissed.

mantown Kinko's, stated loudly to Plaintiff that "black people don't look right on pink paper." Stevenson made this comment in the presence of several Caucasian customers who giggled, along with Stevenson, at this comment.. Plaintiff was the only African-American in the store at the time and was humiliated, embarrassed, distressed, and suffered and continues to suffer mental anguish for which she has been seeking treatment. On April 16, 2002, Plaintiff sent a letter to Defendant Kinko's complaining about the incident but Kinko's failed to address promptly Plaintiff's complaint.

Plaintiff filed the current action in this court on September 23, 2002. She brings one claim for deprivation of equal rights under the law pursuant to 42 U.S.C. § 1981 against Defendants Kinko's and Stevenson and seeks $6 million as compensatory and punitive damages from Defendants jointly and severally. She also brings a second claim for negligent hiring, retention, or supervision against Defendant Kinko's, seeking $3 million as compensatory damages and costs.

## II. Standard of Review

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enters. Ltd. v. Air-A-Plane Corp.,* 128 F.3d 855, 860 (4th Cir.1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any

set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), *quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

## III. Analysis

### A. Section 1981

■ Section 1981 provides that:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, ... as is enjoyed by white citizens ....

(b) ... the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981. Most § 1981 actions involve employment discrimination claims, and courts analyze such cases employing the same statutory scheme used in cases

brought under Title VII. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir.2000); *Gairola v. Commonwealth of Virginia Dept. of Gen. Serv.*, 753 F.2d 1281, 1285–86 (4th Cir.1985) (citations omitted). Discrimination claims involving retail transactions have been more rare. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.1996). However, when faced with such claims, courts generally employ a three-prong test to analyze them. To state a cause of action in a § 1981 action like the one presently before the court, a plaintiff must show: (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute. *Buchanan v. Consolidated Stores Corp.*, 125 F.Supp.2d 730, 734 (D.Md.2001), citing *Hill v. Shell Oil Co.*, 78 F.Supp.2d 764, 776 (N.D.Ill.1999); *Bobbitt v. Rage Inc.*, 19 F.Supp.2d 512, 517 (W.D.N.C. 1998).

Kinko's argues that Plaintiff has not alleged facts sufficient to meet the third prong of the *prima facie* case. Plaintiff counters that: (1) she need not plead a *prima facie* case of discrimination because she has pled direct evidence of discrimination and because she has sufficiently placed Kinko's on notice of the nature of the case against it pursuant to the holding in *Swierkiewicz;* and (2) she need not show denial of service to state a *prima facie* case.

■ Plaintiff correctly notes that, pursuant to the Supreme Court's holding in *Swierkiewicz,* she is not required to meet a heightened pleading requirement that rigidly conforms to the *McDonnell–Douglas*[2] burden-shifting framework in order to survive a motion to dismiss. Nevertheless, Plaintiff is still required to allege facts that are legally sufficient to state a claim under § 1981. As the Court

stated in *Swierkiewicz,* "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.*, 534 U.S. at 514, 122 S.Ct. 992, *quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ As stated by the First Circuit in *Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir.2002), "in order to satisfy the foundational pleading requirements for a suit under section 1981, a retail customer must allege that he was actually denied the ability to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus." *Id.*, at 100–01, citing *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir.2001); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir.2001); *Office Max*, 89 F.3d at 414. Courts, including this one, that have examined discrimination in the retail context under § 1981 have focused on the question of whether a plaintiff's right to contract has been impeded, thwarted, or deterred in some way, *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358–59 (5th Cir.2003); *Morris*, 277 F.3d at 751 ("where a customer has engaged in an actual attempt to contract that was thwarted by the merchant, courts have been willing to recognize a § 1981 claim."); *Office Max*, 89 F.3d at 414 (holding that where a defendant did not deny plaintiffs admittance or service and did not ask plaintiffs to leave the store, defendant did not deprive plaintiffs of the right to make and enforce a contract), or whether special conditions have been placed on a plaintiff's right to contract. *Buchanan*, 125 F.Supp.2d at 735–36, citing *Hill*, 78 F.Supp.2d at 776–77 (holding that black plaintiffs who purchased gasoline stated a

---

2. *See McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

cause of action under § 1981 where defendants forced them but not white patrons to prepay); *Bobbitt,* 19 F.Supp.2d at 519 (denying motion to dismiss where plaintiffs were allowed to purchase a pizza, but, unlike other customers, were forced to prepay for it).

■ Plaintiff claims that she was "denied the full enjoyment of her contractual relationship as is enjoyed by Kinko's Caucasian customers under the expanded meaning of making and enforcing contract [sic] under subsection (b) of section 1981." Paper 7, at 11. Plaintiff underscores her allegation that Stevenson made a racial comment to her and that the racial comment was accompanied by giggling on Stevenson's part and some of the Kinko's customers present at the time. Plaintiff's argument is that Kinko's subjected her to humiliation and distress to which it did not subject its Caucasian customers.

Plaintiff's allegations, without more, however, do not state a race discrimination claim under § 1981. The contract between Kinko's and Plaintiff was for the making of photocopies. On April 11, 2002, Plaintiff entered the establishment of Defendant Kinko's located in Germantown, Maryland, made her photocopies, and paid for them. Her enjoyment of the *right* to contract was not affected by Stevenson's comment that "black people don't look right on pink paper" and the subsequent giggling during the course of that transaction. Plaintiff was not denied services or admittance, asked to leave, or required to prepay at Kinko's. What was affected, according to the facts Plaintiff alleges, was her enjoyment of the contracting *experience.*

■ In 1991, Congress amended § 1981 to include the language defining "make and enforce contracts" at subsec-

tion (b).[3] By doing so, however, Congress did not intend to convert § 1981 into a general prohibition against race discrimination. *See Garrett,* 295 F.3d at 100; *see also Youngblood v. Hy–Vee Food Stores, Inc.,* 266 F.3d 851, 855 (8th Cir.2001). As the Tenth Circuit concluded in *Hampton,*

> [w]e refrain from adopting [the] expansive interpretation that § 1981 broadens the scope of relevant civil rights and protects customers from harassment upon entering a retail establishment.... [W]e cannot extend § 1981 beyond the contours of a contract. We are aligned with all the courts that have addressed the issue that there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping.

*Id.,* 247 F.3d at 1118, *citing inter alia Lewis,* 948 F.Supp. at 371 (rejecting theory that an unwritten contract between commercial establishments and the public guarantees that all who enter the premises of the commercial establishment will be treated equally regardless of race because such a theory would transform the statute into a general cause of action for race discrimination in all contexts). It is regrettable if Plaintiff suffered humiliation and distress from her experience at Kinko's, nevertheless, the facts she has alleged do not state a cause of action for which § 1981 provides a remedy. The motion to dismiss Plaintiff's § 1981 claim will be granted.

### B. Negligent Hiring, Retention, or Supervision

■ Kinko's also moves to dismiss Plaintiff's claim brought under Maryland common law for negligent hiring, retention, or supervision. In order to establish a claim for this form of negligence, Plain-

---

**3.** *See Lewis v. J.C. Penney Co., Inc.,* 948 F.Supp. 367, 370–71 (D.Del.1996), providing background and legislative history of the 1991 amendment.

tiff must show that: "the employer of the individual who committed the allegedly tortious act owed a duty to the plaintiff, that the employer breached that duty, that there was a causal relationship between the harm suffered and the breach of the employer's duty, and that the plaintiff suffered damages." *Penhollow v. Board of Comm'rs for Cecil County,* 116 Md.App. 265, 695 A.2d 1268, 1284 (1997), *citing Cramer v. Housing Opportunities Comm'n of Montgomery County,* 304 Md. 705, 501 A.2d 35, 39 (1985). Kinko's challenges the sufficiency of Plaintiff's claim, arguing that Stevenson's conduct toward Plaintiff does not qualify as a legally cognizable tort under Maryland common law. Although Plaintiff does not include an independent claim for intentional infliction of emotional distress in her Complaint, she counters that Stevenson's remark and giggling caused Plaintiff to suffer mental injury and therefore constitutes a legally cognizable claim for that tort.

The elements of the tort of intentional infliction of emotional distress are: 1) intentional or reckless conduct, 2) that was extreme and outrageous, 3) the conduct caused plaintiff's emotional distress, and 4) plaintiff's emotional distress was severe. *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611, 614 (1977). For conduct to qualify as extreme and outrageous, it must be so "outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." *Id.* It is for the court to determine whether the alleged conduct may reasonably be regarded as extreme and outrageous. *Id.,* at 615.

Maryland courts have emphasized that the elements of an intentional infliction of emotional distress claim are difficult to satisfy and that "major outrage is essential to the tort; the mere fact that the actor knows that the other will regard the conduct as insulting or will have his feelings hurt, is not enough." *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby,* 326 Md. 663, 607 A.2d 8, 11 (1992). Stevenson's conduct, as alleged by Plaintiff, which includes the comment "black people don't look right on pink paper" and the giggling that followed, does not meet the threshold for extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress under Maryland law. Moreover, the alleged comment was relevant in the context of assisting Plaintiff to make photocopies and, even if deemed insulting by Plaintiff, was not intentionally or recklessly so. As a result, Plaintiff's claim for negligent hiring, retention, or supervision must also fail for the absence of a legally cognizable relationship between the alleged breach of Defendant Kinko's duty to Plaintiff and the harm suffered by Plaintiff. Defendant Kinko's motion to dismiss this claim will therefore be granted.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss Plaintiff's Complaint will be granted. A separate order will follow.

### ORDER

For the reasons stated in the foregoing memorandum opinion, it is this 7th day of July, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. The motion of Defendant Kinko's to dismiss the Complaint of Plaintiff Kelina Baltimore–Clark BE, and the same hereby IS, GRANTED;

2. Plaintiff's claims for race discrimination pursuant to 42 U.S.C. § 1981 and for negligent hiring, retention, or supervision pursuant to Maryland common law against Defendant Kinko's and Plaintiff's race discrimination against Defendant Stevenson

BE, and the same hereby ARE, DISMISSED; and

3. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.